NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| JIAHERB, INC., <br><br> *Plaintiff*, <br><br> v. <br><br> MTC INDUSTRIES, INC. <br><br> *Defendant*. | Civil No. 18-15532 (KSH) (CLW) <br><br><br> **Opinion** |

**Katharine S. Hayden, U.S.D.J.**

I. **Introduction**

In Count One of its complaint, plaintiff Jiaherb, Inc. ("Jiaherb") alleges that defendant MTC Industries, Inc. ("MTC") misrepresented its saw palmetto product[1] as unadulterated in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

II. **Background**

According to the complaint, Jiaherb manufactures herbal extracts and other natural ingredients, including SAW PALMETTO PURE ™, a saw palmetto oil and powder extract available in various compositions. (D.E. 1 ("Compl.") ¶¶ 14, 24.) MTC is a nutritional ingredient supplier and distributor of saw palmetto extract. (*Id.* ¶13.)

---

[1] Ripe berries of the saw palmetto plant are used in health supplements, most commonly sold as treatments for prostate conditions.

Jiaherb purchased all of its saw palmetto extract, totaling thousands of kilograms, from MTC. (*Id.* ¶¶ 33, 41.)

Saw palmetto is not farmed or cultivated and is only native to the southeastern United States. Given its limited availability, the pure form of this product is expensive. (*Id.* ¶ 26.) To enhance profit, harvesters sometimes dilute their product by adding vegetable oils, such as coconut oil. (*Id.* ¶¶ 29-30.) Because these oils contain some of the same components as saw palmetto berries, it is difficult to detect adulteration. (*Id.* ¶ 30.)

Jiaherb alleges that MTC adulterated its products by adding vegetable oils and omitted this fact from its advertisements, thus misrepresenting its inferior saw palmetto products as unadulterated. (*Id.* ¶ 32.) Furthermore, Jiaherb contends that MTC advertised its products as comprehensively tested and certified according to various industry standards. (*Id.* ¶¶ 34-40.) For example, MTC advertised on its website that its saw palmetto extract exceeded the minimum requirement for U.S. Pharmacopeia standards in total fatty acids, which is an indicator of the product's quality. (*Id.* ¶ 37.)

Upon receipt of a supplier's ingredients, Jiabherb performs discrete testing to ensure the integrity of its products. (*Id.* ¶ 43.) Although Jiaherb's initial testing failed to detect the presence of vegetable oils in MTC's product, one of Jiaherb's customers performed a more sophisticated Nuclear Magnetic Resonance examination and

2

concluded that the MTC product did in fact contain coconut oil. As a result, this customer cancelled two purchase orders, which Jiaherb alleges cost them approximately $202,742.00 in lost profits. (*Id.* ¶¶ 45-46.) Thereafter, Jiaherb ordered additional, independent testing, which also concluded that MTC's products were adulterated. (*Id.* ¶¶ 47, 51-58.) Jiaherb also seeks a $442,262.50 refund from MTC, which represents the amount already paid to MTC for what Jiaherb had understood to be unadulterated saw palmetto extract. (*Id.* ¶ 66.) MTC denies all wrongdoing and asserts that Jiaherb's lawsuit is the result of its inability to resell its product. (D.E. 23 ("MTC's Mov. Br."), pg. 1-2.)

The pending motion is directed at Count One of the complaint, which alleges a violation of the Lanham Act for false advertising and unfair competition. 15 U.S.C. § 1125(a). The remaining counts are brought under the UCC and state law theories of liability, over which the Court retains subject matter jurisdiction pursuant to 28 U.S.C. § 1332(a)(1) because the parties are diverse and the amount in controversy exceeds $75,000.00.[2]

### III. Legal Standard

MTC moves pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief can be granted. To survive dismissal, "a complaint must contain sufficient factual matter, accepted as true" to state a facially plausible claim for relief. *Ashcroft v.*

---

[2] Although Jiaherb refers to Counts One through Eight in its complaint, Jiaherb has only alleged seven claims of action. Compl. at ¶ 72-136.

*Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A plausible claim is one that permits the court to "draw the reasonable inference that the defendant is liable for the misconduct alleged." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) (quoting *Iqbal*, 556 U.S. at 678). Fundamentally, the plausibility determination is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 211 (quoting *Iqbal*, 556 U.S. at 679).

## IV. Discussion

The Lanham Act provides a cause of action for any person who "uses in commerce any…false or misleading representation of fact, which…misrepresents the nature, characteristics, [or] qualities…of his or her or another person's goods, services, or commercial activities." 15 U.S.C. § 1125(a)(1). The purpose of the Act is to "protect persons engaged in such commerce against unfair competition." 15 U.S.C. § 1127; *see also POM Wonderful LLC v. Coca-Cola Co.*, 134 S. Ct. 2228, 2234 (2014).

In *Lexmark Int'l, Inc. v. Static Control Components*, 134 S. Ct. 1377 (2014), the Supreme Court set forth a two-prong test to determine whether a plaintiff has standing to sue under § 1125(a) of the Lanham Act. The critical inquiry is whether the plaintiff "falls within the class of plaintiffs whom Congress has authorized to sue under § 1125(a)." *Id.* at 1388.

4

Under the first prong, the plaintiff's interests must "fall within the zone of interests protected by the law invoked." *Id.* Thus, a plaintiff bringing a § 1125(a) false advertising claim "must allege an injury to a commercial interest in reputation or sales." *Id.* at 1390. To satisfy the second prong, the plaintiff must demonstrate that its injuries were proximately caused by a violation of the statute. *Id.* Therefore, a plaintiff suing under § 1125(a) "ordinarily must show economic or reputational injury flowing directly from the deception wrought by the defendant's advertising; and that occurs when deception of consumers causes them to withhold trade from the plaintiff." *Id.* at 1391.

*Lexmark* addressed a circuit split on standing to invoke Lanham Act protection. The decision clarified that the Lanham Act does not protect direct competitors exclusively. *Id.* at 1392. But in noting that "[a] consumer who is hoodwinked into purchasing a disappointing product…cannot invoke the protection of the Lanham Act," the Court added: "Even a business misled by a supplier into purchasing an inferior product is, like consumers generally, not under the Act's aegis." *Id.* at 1390. *See also Locus Telecommunications, Inc. v. Talk Glob., LLC*, No. 14-1205, 2014 WL 4271635, at *2 (D.N.J. Aug. 28, 2014) (Chesler, J.) (quoting *Lexmark Int'l*, 134 S. Ct. at 1390).

This language prompts MTC's motion to dismiss Count One because MTC is Jiaherb's supplier, rather than its competitor. MTC further asserts that under *Lexmark*, Jiaherb's claim falls outside the protectable zone of interest because is a business

5

claiming it was "hoodwinked"—misled by its supplier into purchasing an inferior product.

MTC argues the situation in the present case is comparable to *Knit With v. Knitting Fever, Inc.*, 625 F. App'x 27, 41 (3d Cir. 2015), where Knit With was a small business that purchased cashmere yarns from the defendant, a business entity that sourced various knitting products, and then sold the yarns to consumers. *Knit With v. Knitting Fever, Inc.*, No. 08-4221, 2008 WL 5381349, at *1-3 (E.D. Pa. Dec. 18, 2008), *aff'd sub nom. The Knit With v. Knitting Fever, Inc.*, 625 F. App'x 27 (3d Cir. 2015). When plaintiff discovered the yarns did not contain cashmere, it brought a claim for false advertising under the Lanham Act. *Id.* The District Court dismissed that claim and the Third Circuit affirmed, ruling that a "retailer who alleges to have been misled by its supplier into purchasing mislabeled yarn, is not within the zone of interests protected by the Lanham Act." *Knit With*, 625 App'x at 41. In doing so, the Third Circuit relied on *Lexmark* where the Court likened a "hoodwinked" consumer to a "business misled by a supplier into purchasing an inferior product." *Id.* at 41 (quoting *Lexmark Int'l*, 134 S. Ct. at 1390). *See also MHA, LLC v. Siemens Healthcare Diagnostics, Inc.,* No. 15-1573, 2017 WL 838797, at *3 (D.N.J. Mar. 2, 2017) (Linares, J.) (holding that plaintiff, a purchaser of a faulty diagnostic equipment does not have standing to bring a Lanham Act claim against the defendant manufacturer, as the plaintiff is essentially a consumer of the defendant's product).

In *Locus Telecommunications, Inc. v. Talk Global, LLC*, the plaintiff, a commercial reseller of personal identification numbers ("PINs") used to add minutes to prepaid cell phones, brought a Lanham Act claim against the defendant, the commercial entity that sold the PINs to the plaintiff, because the PINs did not function as well as advertised. The plaintiff alleged that the poor quality of the PINs in turn led to decreased sales and consumer disappointment. *Id.* at *1. Judge Chesler held that the plaintiff's injury was "precisely the type of harm the *Lexmark* Court was careful to distinguish as falling outside the Lanham Act's purview." *Id.* at *2. He found plaintiff's injury did "not stem from conduct by [the defendant] which unfairly diminished [the plaintiff's] competitive position in the marketplace." *Id.* Instead, plaintiff was induced to purchase the PINs "by the allegedly deceitful and/or misleading statement made by [the defendant] to promote that product." *Id.* Judge Chesler's plaintiff suffered injuries flowing from non-functioning PINs rather than false advertising and as such, lacked statutory standing to bring a claim under the Lanham Act.

In its complaint, Jiaherb alleges injury to its "business, reputation, and good will." Compl. ¶ 79. More specifically, Jiaherb claims that MTC induced it into purchasing adulterated saw palmetto product, Compl. ¶ 4, and consequently, customers cancelled orders and Jiaherb lost profits. *Id.* ¶ 46. Jiaherb further alleges that MTC's false statements deceived both Jiaherb and Jiaherb's current and potential customers, *id.* ¶ 76, and this deception is "likely to influence the purchasing decisions of Jiaherb's

7

customers." *Id.* ¶ 77-78. Notwithstanding, Jiaherb's injury does not stem from MTC's false advertising or conduct by MTC which unfairly diminished Jiaherb's competitive position in the marketplace. Rather, Jiaherb is harmed as a consumer of MTC's product; Jiaherb's lost profits and goodwill stem from its purchase of a product which it cannot sell. The injury of a consumer-entity that was misled into purchasing a "disappointing product" is precisely the type that the *Lexmark* Court excluded from Lanham Act relief. As a result, the Court is constrained to find that Jiaherb has failed to establish it has statutory standing to bring a claim under the Lanham Act.

In its opposition brief, Jiaherb seeks leave to amend its complaint should the Court dismiss Count One. Jiaherb's Opp. Br., at pg. 13. The facts in both *Locus* and *Knit With*, two analogous cases that were dismissed with prejudice, cite to facts that defined the parties' roles of plaintiff-purchaser and defendant-supplier. Similarly, Jiaherb's complaint describes Jiaherb as manufacturer and purchaser and MTC as a supplier and distributor. Compl. ¶ 13-14. In a footnote in Jiaherb's opposition brief, Jiaherb raises the possibility that a different relationship exists between it and MTC—as potential competitors. Based on this, the Court is not in a position to dismiss the Lanham Act claim with prejudice, albeit any motion seeking to amend must assert a plausible basis for a less limited relationship.

## V. Conclusion

For the foregoing reasons, MTC's motion to dismiss is granted. An appropriate order will be entered.

Dated: September 30, 2019

/s/ Katharine S. Hayden
Katharine S. Hayden, U.S.D.J.