<u>**NOT FOR PUBLICATION**</u>

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| JIAHERB, INC., <br><br> *Plaintiff,* <br><br> v. <br><br> MTC INDUSTRIES, INC., <br><br> *Defendant,* | Civil Action No. 18-15532 (KSH) (CLW) |
| MTC INDUSTRIES, INC., <br><br> *Plaintiff,* <br><br> v. <br><br> JIAHERB, INC., <br><br> *Defendant.* | Civil Action No. 22-4679 (KSH) (CLW) <br><br><br> **OPINION** |

<u>**Katharine S. Hayden, U.S.D.J.**</u>

**I.   Background**

This matter arises from the online advertisement and sale of saw palmetto oil, a nutritional supplement often used to treat enlarged prostate and other medical conditions. In October 2018, plaintiff Jiaherb, Inc. sued defendant MTC Industries, Inc. alleging that MTC adulterated its product with low-cost oils and omitted that fact from its advertisements. Jiaherb's complaint asserted unfair competition and false advertisement claims under the Lanham Act, 15 U.S.C. § 1125(a), as well as claims under the UCC and state law arising from MTC's purported fraudulent inducement and breach of contract. (D.E. 1.) The parties proceeded to discovery under the supervision of Magistrate Judge Waldor and engaged in dispositive motion practice.

1

Nearly four years after Jiaherb filed its complaint, on June 3, 2022, MTC moved to amend its answer to assert two counterclaims against Jiaherb for trade secret misappropriation under the Defend Trade Secrets Act of 2016, 18 U.S.C. § 1832, *et seq.* (the "DTSA"), and the New Jersey Trade Secrets Act, N.J.S.A. 56:15-1, *et. seq.* (the "NJTSA"). (D.E. 116.) In its proposed counterclaims, MTC alleged that during discovery, Jiaherb requested sensitive documents that contained MTC's trade secrets and subsequently misappropriated those trade secrets in violation of the parties' protective order and federal and state law. (*See* D.E. 116-3.) On July 21, 2022, while the motion to amend was pending, MTC filed a separate lawsuit against Jiaherb and asserted its proposed misappropriation counterclaims in the affirmative. *See MTC Industries, Inc. v. Jiaherb, Inc.*, 22-cv-4679 (KSH) (CLW). Magistrate Judge Waldor consolidated the cases and denied MTC's motion to amend its answer as moot in an order dated September 14, 2022. (D.E. 118.)

Presently before the Court is Jiaherb's motion to dismiss MTC's complaint pursuant to Fed. R. Civ. P. 12(b)(6). (D.E. 119.) Jiaherb argues that the complaint should be dismissed for failure to plead the essential elements of a trade secret misappropriation claim, namely: (i) the existence of a trade secret; and (ii) unlawful use or misappropriation of that trade secret. (D.E. 119-1, Mov. Br.; *see also* D.E. 123, Reply Br.) MTC opposes and requests leave to amend should the Court find its allegations insufficient. (D.E. 121, Opp. Br.)

## II.     Standard of Review

To withstand a motion to dismiss under Rule 12(b)(6), the complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face,'" meaning the plaintiff has pleaded "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S.

662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556, 570 (2007)). Accordingly, the plaintiff must "plead more than the possibility of relief." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009).  The Court will "disregard legal conclusions and 'recitals of the elements of a cause of action, supported by mere conclusory statements.'" *Santiago v. Warminster Twp.*, 629 F.3d 121, 128 (3d Cir. 2010) (quoting *Iqbal*, 556 U.S. at 678).

### III.     Discussion

The theory underlying MTC's complaint is that Jiaherb, a competitor in the saw palmetto oil market, filed its lawsuit in 2018 for the purpose of obtaining MTC's trade secrets.  (*See* D.E. 121-2, MTC Compl. ¶¶ 10, 19.)  Specifically, MTC claims that Jiaherb misused sensitive documents that MTC turned over in discovery.  (*See id.* ¶¶ 41, 51.)

For example, in response to Jiaherb's request for documents related to MTC's vendors and suppliers, MTC produced an "Approved Vendor List," which contains information about its approved supplier for saw palmetto oil products sold in the United States, as well as a "Standard Operating Procedure" for selecting, qualifying, and managing its suppliers.  (*Id.* ¶¶ 20-22, 24.) MTC designated both documents "Attorneys' Eyes Only" pursuant to the parties' protective order.  (*Id.* ¶¶ 21, 23.)  However, on July 28, 2019—less than one week after Jiaherb's counsel[1] received the documents—both Jiaherb and its parent company contacted MTC's supplier directly to purchase saw palmetto oil product.  (*Id.* ¶ 28.)  Jiaherb reached out to MTC's supplier on two additional occasions—once in 2020 and again in December 2021, when Jiaherb's sales manager falsely represented that MTC had "introduced" Jiaherb to the supplier.  (*Id.* ¶¶ 30-32.)  MTC

---

[1] Jiaherb was represented by former counsel, Rivkin Radler LLP, at the time of the alleged misappropriation.

3

claims to have received significantly less product from its supplier since Jiaherb first made contact in July 2019.  (*Id.* ¶ 34.)

"Both the DTSA and the NJTSA require a plaintiff 'to demonstrate (1) the existence of a trade secret, defined broadly as information with independent economic value that the owner has taken reasonable measures to keep secret, and (2) misappropriation of that secret, defined as the knowing improper acquisition and use or disclosure of the secret.'"  *Corp. Synergies Grp., LLC v. Andrews*, 2019 WL 3780098, at *3 (D.N.J. Aug. 12, 2019) (Vazquez, J.) (quoting *Par Pharm., Inc. v. QuVa Pharma, Inc.*, 764 F. App'x 273, 278 (3d Cir. 2019)); *accord Scherer Design Grp., LLC v. Schwartz*, 2018 WL 3613421, at *4 (D.N.J. July 26, 2018) (Thompson, J.) ("For courts in this District, the analysis under DTSA folds into that of NJTSA.").

"In any trade secret case, the Court must first determine whether there exists, in fact, a trade secret."  *Baxter Healthcare Corp. v. HQ Specialty Pharma Corp.*, 157 F. Supp. 3d 407, 424 (D.N.J. 2016) (Simandle, J.).  To plead the existence of a trade secret adequately, the plaintiff "must sufficiently identify the information it claims as a trade secret and allege facts supporting the assertion that the information is indeed protectable as such."  *Oakwood Lab'ys LLC v. Thanoo*, 999 F.3d 892, 905 (3d Cir. 2021).  The Third Circuit has enumerated six factors for courts to consider in determining whether information is a protectable trade secret, namely: (i) the extent to which the information is known outside the owner's business; (ii) the extent to which it is known by those within the business; (iii) the measures taken to protect its secrecy; (iv) its value to competitors; (v) the effort or money expended to develop the information; and (vi) the ease or difficulty with which it could be properly acquired or duplicated.  *See Nova Chemicals, Inc. v. Sekisui Plastics Co.*, 579 F.3d 319, 327 (3d Cir. 2009).  The Third Circuit recently captured the spirit of those six factors in a more streamlined test, instructing courts to

4

consider "whether the owner of the information has taken reasonable measures to keep . . . [it] secret and whether the information derives independent economic value, actual or potential, from not being generally known to . . . another person who can obtain economic value from the disclosure or use" of it.  *Oakwood Lab'ys LLC*, 999 F.3d at 905 (internal citations and quotations omitted).  Furthermore, the Third Circuit has recognized that there are three ways to establish misappropriation—"improper acquisition, disclosure, or use of a trade secret without consent"— and has broadly construed the term "use" to "encompass[] all the ways one can take advantage of trade secret information to obtain an economic benefit, competitive advantage, or other commercial value, or to accomplish a similar exploitative purpose." *Id.* at 907-08, 910.

      Here, MTC alleges the existence of two trade secrets—namely, (i) the "identity" of its approved saw palmetto oil supplier; and (ii) MTC's procedures for selecting, qualifying, and managing its suppliers.  (*See* MTC Compl. ¶¶ 27, 36, 46.)  However, only the former appears to have been "used" or otherwise misappropriated by Jiaherb.  MTC's theory is a simple one:  MTC produced documents in discovery bearing the name of its approved supplier, and Jiaherb sought to purchase saw palmetto oil product directly from that supplier a few days later.  (*See id.* ¶¶ 33, 41.)  Nowhere in the complaint does MTC allege that Jiaherb used MTC's procedures to manage its relationship with the approved supplier, or that Jiaherb used those procedures to select and qualify other saw palmetto oil suppliers.

      Focusing, then, on the identity of MTC's approved supplier, MTC has failed to allege how that information "derives independent economic value . . . from not being generally known" to competitors.  *Oakwood Lab'ys LLC*, 999 F.3d at 905 (internal citations and quotations omitted).  MTC has not alleged that it negotiated unique pricing or quantity arrangements with its supplier; nor has it alleged that its supplier's product is formulated differently than others

available on the saw palmetto oil market. Instead, MTC argues in its opposition brief that the identity of its approved supplier

> gives MTC a competitive advantage to the extent that it makes MTC able to supply high quality saw palmetto oil products in large volume to the U.S. market and the buyers in the U.S. market can rely on MTC's goodwill and reputation to make the purchase without having to choose from hundreds of the Saw Palmetto Oil suppliers all over the world by themselves. If MTC's Supplier's identity becomes public or is learned by its competitors, other companies could circumvent the arrangement between MTC and its Supplier and make the purchase directly from the Supplier.

(Opp. Br. at 5.)

MTC's arguments conflate routine business preferences with protectable trade secrets, and its concern that competitors will purchase product directly from its supplier is an inevitable consequence of a free and open market. *See SI Handling Sys., Inc. v. Heisley*, 753 F.2d 1244, 1257 (3d Cir. 1985) (on appeal from entry of preliminary injunction, finding that identity of suppliers and price of their merchandise was not an "independent trade secret" because suppliers themselves "have every incentive, and every right, to disclose it," and reasoning that a finding to the contrary would "put an undue burden on the innocent vendors, as well as place an artificial constraint on the free market"); *Smith v. BIC Corp.*, 869 F.2d 194, 200 (3d Cir. 1989) (on appeal from denial of protective order, affirming district court's finding that "names of manufacturers and suppliers of the materials were not trade secrets" based on reasoning in *SI Handling*). If, as the complaint alleges, MTC and its approved supplier have an exclusive relationship, competitors like Jiaherb will be hard pressed to purchase product directly from the supplier. That is precisely what happened here—MTC's supplier "declined to sell . . . product to Jiaherb because MTC was the Supplier's exclusive distributor in the U.S. market." (*See* MTC Compl. ¶

29.) At bottom, however, MTC has not alleged that the identity of its supplier is a protectable trade secret.[2]

Moreover, MTC itself has failed to protect the identity of its approved supplier. The complaint alleges that MTC has expended a significant amount of time, money, and other resources to research and qualify hundreds of saw palmetto oil suppliers around the world, and to ultimately select and manage its approved supplier. (*See id.* ¶ 26). If that were true, one would expect MTC to use several protective measures to keep its approved supplier's identity under lock and key. However, other than alleging that it produced documents during discovery with the restrictive "Attorneys' Eyes Only" designation, MTC has not alleged what specific steps, if any, it takes to protect its supplier information in the ordinary course of business. (*See* MTC Compl. ¶¶ 37, 47; *see also id.* ¶¶ 38, 48 (alleging without explanation that "MTC takes reasonable steps to maintain confidentiality with respect to" its trade secrets).)

Finally and significantly, MTC's indifference to the protection of its supplier's identity is evident from the case docket. It appears that MTC became aware of Jiaherb's alleged misappropriation almost immediately after Jiaherb and its parent company first contacted MTC's supplier in July 2019. MTC raised the issue in an August 29, 2019 letter to Judge Waldor, who

---

[2] In an attempt to save its futile trade secret allegations, MTC likens the identity of its approved supplier to customer lists, arguing that "the Supplier information in MTC's 'Approved Vendor List' has been held by MTC as confidential and a large amount of time and effort have been used in creating this list." (Opp. Br. at 7.) However, the trade secret alleged in MTC's complaint is not the vendor list itself, but the identity of MTC's approved supplier (*see, e.g.*, MTC Compl. ¶ 36 ("**The 'Approved Vendor List,'** the supplier selection/qualification SOP and the vendor compliance/management procedures **contain MTC's trade secrets . . . to the extent that they identify MTC's Supplier information for the Saw Palmetto Oil product** and they contain MTC's procedures to select and manage its suppliers." (emphasis added)); *see also* Opp. Br. at 4-5 ("[O]ne of the trade secrets claimed by MTC **is the Supplier's identity as its Approved Vendor for MTC's saw palmetto oil products sold in the U.S.**")), and the complaint fails to allege Jiaherb's misappropriation of the list as a whole.

7

ordered limited discovery to be completed by the end of October.  (D.E. 39, 40.)  Yet for the next two and a half years of active litigation, MTC did not assert counterclaims or otherwise seek court intervention for Jiaherb's alleged misappropriation, including those times it alleges Jiaherb contacted the supplier in 2020 and 2021.  (*See* MTC ¶¶ 30-31.)

Accordingly, the Court finds that MTC has failed to allege viable misappropriation claims under the DTSA and NJTSA, and its complaint must be dismissed.  The Third Circuit has instructed that "inadequate complaints should be dismissed without granting leave to amend only if the amendment would be inequitable or futile." *Grayson v. Mayview State Hosp.*, 293 F.3d 103, 106 (3d Cir. 2002).  In this case, dismissal shall be with prejudice, as MTC's allegations suffer from incurable deficiencies.  Moreover, any further delay to this litigation would be inequitable.

### IV.   Conclusion

For the foregoing reasons, Jiaherb's motion to dismiss (D.E. 119) will be granted.  An appropriate order will issue.

Date:  May 4, 2023                             /s/ Katharine S. Hayden
                                               Katharine S. Hayden, U.S.D.J.